Filed 9/29/14  P. v. Wallis CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C074972 |
| v. | (Super. Ct. Nos. 12NCR09406 & 13NCR09623) |
| RAY LEE WALLIS, | |
| Defendant and Appellant. | |

A jury convicted defendant Ray Lee Wallis of home invasion robbery in concert and possession of methamphetamine.  The trial court sentenced him to 10 years eight months in state prison.

Defendant now contends the prosecutor engaged in prejudicial misconduct during closing argument, depriving defendant of his due process right to a fair trial.  We

1

conclude the prosecutor's comments in closing argument did not rise to the level of misconduct.

We will affirm the judgment.

BACKGROUND

A

Sarah Martin invited Michael Brown to her apartment. Martin initially told Brown they were alone, but then a man Brown knew as Watts entered from another room. Two other men, defendant and Torreno, also entered the apartment. Torreno alleged that Brown had called him "a punk" the year before; when Brown denied any recollection of the alleged slight, Torreno began assaulting Brown. Defendant and Watts also hit Brown during the altercation.

Torreno displayed a knife and demanded Brown's wallet and phone. By that time, defendant stood by the door to prevent others from entering the apartment. Torreno returned Brown's driver's license and social security card and Brown left the apartment. Brown did not report the incident to the police because he hoped to retaliate and retrieve his wallet and phone himself.

A short time later, as Brown was waiting outside a nearby bar, he saw defendant approach alone. When Brown confronted defendant, defendant returned Brown's phone and took him to where he was storing the wallet. When Brown said his money ($263) better be in the wallet, defendant was surprised; defendant said he had been told there was no money in the wallet. Defendant subsequently confronted Watts about the money because he was upset he did not receive his share. Some time later, defendant apologized to Brown for the incident.

Defendant testified that Martin had invited him to the apartment. When he returned to the apartment after smoking a cigarette, Torreno was confronting Brown. Defendant said he never hit Brown, but when Brown approached him by the door, defendant pushed Brown away. Defendant claimed that he tried to de-escalate the

2

situation in the apartment and did not know anyone was at the apartment to commit robbery. He considered Brown a friend and took Brown's wallet and phone from the apartment with the intent of returning them to Brown.

B

In his closing argument, defense counsel argued, "I do not doubt for even a second that [Brown] was assaulted. I do not doubt for a second that he was robbed. What I doubt, Ladies and Gentlemen of the Jury, is that the man that tried to prevent this and the man that went out of his way to return the property afterwards, the man that the victim told you is his friend, and the victim told you he doesn't believe that he got anything out of this, who [*sic*] is not a robber and not someone that you should condemn with your verdict."

In rebuttal, the prosecutor stated: "My uncle had a ranch in Morocco, and there were some housing developments that slowly progressed and more and more houses and one of the problems that happened was people's dogs would get together at night. It could be a poodle. It could be a simple little family dog. Friendly when they're by themselves but you put a pack of them together and they'd chase down his cattle and kill them. . . . And he went out there and would shoot them. [¶] And now, you saw the defendant testify. And I submit to you it's like a pack animal. It's like a dog. And when he's in a pack, they act differently."

Defense counsel objected to the characterization of defendant. The trial court overruled the objection.

The prosecutor continued: "And when they are together and they have a victim, they act differently. They are all slugging on him and got his wallet and everything like that."

DISCUSSION

Defendant contends the prosecutor committed misconduct by comparing defendant "to a marauding dog that should be shot for the safety of the community . . . ."

3

While we do not condone the prosecutor's analogy, it did not rise to the level of misconduct.  (*People v. Thomas* (2012) 54 Cal.4th 908, 943, citing *People v. Zambrano* (2007) 41 Cal.4th 1082, 1172.)  The prosecutor sought to explain how the same person could participate in a group assault and robbery of Brown and also apologize for the behavior and return Brown's stolen items.

" 'To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.' [Citation.]" (*People v. Gamache* (2010) 48 Cal.4th 347, 371.)  "[P]rosecuting attorneys are allowed a wide range of descriptive comment and the use of epithets which are reasonably warranted by the evidence" in presenting their arguments.  (*People v. Terry* (1962) 57 Cal.2d 538, 561.) "[A] prosecutor is not 'required to discuss his [or her] view of the case in clinical or detached detail.' [Citation.]  '[T]he use of derogatory epithets to describe a defendant is not necessarily misconduct.' (*People v. Friend* (2009) 47 Cal.4th 1, 32 [defendant described as ' "living like a mole or the rat that he is" '].)  'A prosecutor is allowed to make vigorous arguments and may even use such epithets as are warranted by the evidence, as long as these arguments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury.' [Citation.]  We have repeatedly rejected claims of prosecutorial misconduct involving the use of such epithets in guilt phase arguments.  [Citations.]" (*People v. Tully* (2012) 54 Cal.4th 952, 1021; see, e.g., *People v. Farnam* (2002) 28 Cal.4th 107, 168 [not misconduct to describe a defendant's actions as " 'monstrous,' 'cold-blooded,' vicious," or to describe the defendant as a " 'predator' "]; *People v. Williams* (1997) 16 Cal.4th 153, 220-221 [not misconduct to describe the defendant as part of " 'a pack of laughing hyenas' "]; *People v. Mayfield* (1997) 14 Cal.4th 668, 789 [fair argument for prosecutor to compare the defendant to a " 'mad dog' " that needs to be shot]; *Terry, supra*, 57 Cal.2d at pp. 561-562 [not misconduct to characterize defendant as an " 'animal' "].)  Thus, a prosecutor's remarks,

4

though "harsh and unbecoming," do not amount to misconduct where they "constitute[] reasonable -- if hyperbolic and tendentious -- inferences from the evidence." (*People v. Rowland* (1992) 4 Cal.4th 238, 276-277.)

Here, defense counsel argued to the jury that defendant was not guilty because a person who would return stolen items and apologize would not engage in a beating and robbery of the victim. In response, the prosecutor was entitled to present an alternate interpretation of the evidence: that defendant was a different person when he was with Watts and Torreno, a person who participated in an assault and robbery of Brown. The analogy did not improperly incite the jury's passion or prejudice and it was not misconduct.

DISPOSITION

The judgment is affirmed.

_____MAURO_____, J.

We concur:

_____BLEASE_____, Acting P. J.

_____HOCH_____, J.

5